UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

DWIGHT RUSSELL AND
NATASHA RUSSELL,                                            CASE NO. 08-13173-NPO

DEBTORS.                                                    CHAPTER 13

DWIGHT & NATASHA RUSSELL                                    PLAINTIFFS

VS.                                                         ADV. PROC. NO. 08-01215-NPO

QUEEN CITY FURNITURE                                        DEFENDANT

AMENDED
MEMORANDUM OPINION AND ORDER DENYING
MOTION TO STAY PROCEEDINGS AND TO COMPEL ARBITRATION
OF PLAINTIFFS' CLAIMS

On December 10, 2008, there came on for hearing (the "Hearing") the Motion to Stay Proceedings and to Compel Arbitration of Plaintiffs' Claims (the "Motion") (Adv. Dk. No. 6) filed by Queen City Furniture ("Queen City") and the Plaintiff's (sic) Response in Opposition to Queen City Furniture's Motion to Stay Proceedings and Compel Arbitration of Plaintiff's (sic) Claim (the "Response") (Adv. Dk. No. 11) filed by Dwight Russell and Natasha Russell (the "Debtors") in the above-styled adversary proceeding (the "Adversary"). At the Hearing, P. Scott Phillips appeared on behalf of Queen City, and Arnold D. Lee appeared on behalf of the Debtors. The Court, having considered the pleadings, arguments of counsel, and relevant legal authorities, concludes for the reasons discussed below that the Motion is not well taken and should be denied.[1]

---

[1] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

**Jurisdiction**

This Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. Notice of the Motion was proper under the circumstances.

**Facts**

1. On or about June 10, 2004, Natasha Russell executed a Retail Installment Contract and Security Agreement (the "Contract") (Proof of Claim 19-1) to finance a furniture purchase from Queen City.

2. On August 11, 2008, the Debtors filed their joint voluntary petition for relief pursuant to chapter 13 of the Bankruptcy Code (the "Bankruptcy Case") (Dk. No. 1).

3. The Debtors listed Queen City as a unsecured creditor in their bankruptcy schedules (Dk. No. 10).

4. On October 15, 2008, Queen City filed its Proof of Claim (the "Proof of Claim"), attaching a copy of the Contract as proof of the indebtedness (Proof of Claim 19-1). The copy of the Contract attached to the Proof of Claim was not redacted and, therefore, disclosed personal identifiers such as Natasha Russell's date of birth, social security number, and telephone number, as well as the account number.

5. On October 15, 2008, the Debtors filed a pleading entitled Debtor's (sic) Ex Parte, Emergency Motion to Restrict Public Access to Claim or in the Alternative to Delink, Disable or Remove Proof of Claim #19 filed by Queen City Furniture (the "Emergency Motion") (Dk. No. 35). The Court subsequently entered an Order granting the Emergency Motion, requiring the Clerk of the Bankruptcy Court to remove the Proof of Claim from

public view, and providing Queen City the opportunity to file an amended proof of claim "that complies with the redaction rules regarding personal data identifiers" (Dk. No. 42).

6. On October 15, 2008, the Debtors also initiated the Adversary by filing a Complaint for Contempt of Court, Injunctive Relief, Damages, Mississippi Tort Law, Disallowance of Claim and Other Relief in a Core Adversary Proceeding (the "Complaint") (Adv. Dk. No. 1). In the Complaint, the Debtors seek monetary and other relief for Queen City's disclosure of Natasha Russell's personal identifiers.

7. On October 30, 2008, Queen City filed an Amended Proof of Claim (the "Amended Proof of Claim") which redacted the personal identifiers (Proof of Claim 19-2).

8. On November 14, 2008, Queen City filed its Answer and Defenses to Complaint (Adv. Dk. No. 5), generally denying the allegations set forth in the Complaint, and the Motion presently before the Court. In the Motion, Queen City asserts that, in connection with the Contract, Natasha Russell also executed an Arbitration Provision and Waiver of Jury Trial (the "Arbitration Agreement") (Mt. Ex. A) pursuant to which this Court should stay the Adversary and compel the Debtors to submit their claims to arbitration.

9. On December 4, 2008, the Debtors filed their Response contending that the Motion should be denied because the Adversary "would resolve purely bankruptcy issues; the denial of the motion would protect the debtors from piecemeal litigation; and because the Court has undisputed power under the bankruptcy law to enforce its own orders which clearly ban the disclosure of confidential information like social security numbers" (Resp. ¶ 5).

**Discussion**

The Court of Appeals for the Fifth Circuit recently has stated:

> A two-step analysis is applied to determine whether a party may be compelled to arbitrate. . . . First, we must ask if the party has agreed to arbitrate the dispute. . . . If so, we then ask if "any federal statute or policy renders the claims non-arbitrable."

Sherer v. Green Tree Serv. LLC, 548 F.3d 379, 381 (5th Cir. 2008) (citations omitted). In the case at bar, the Debtors apparently concede that Natasha Russell executed the Arbitration Agreement but argue, essentially, that the Bankruptcy Code and Rules render their causes of action non-arbitrable.

**1.    Does the Adversary Constitute a Core Proceeding?**

In order to determine whether the Bankruptcy Code and Rules render the Debtors' causes of action non-arbitrable, this Court must first determine whether the Adversary constitutes a core or a non-core proceeding. A core proceeding is one that "arises under" or "arises in" a case under title 11. 28 U.S.C. § 1334(b). Matters "arising under" title 11 are those based on a right "created or determined by a statutory provision of the Bankruptcy Code." Buckingham v. Baptist Memorial Hospital-Golden Triangle, Inc., 283 B.R. 691, 693 (N.D. Miss. 2002). Proceedings "arising in" a title 11 case "are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. (citations omitted). In a core proceeding, a bankruptcy court may refuse to enforce an otherwise applicable arbitration agreement only if enforcement of the agreement would conflict with the purpose or provisions of the Bankruptcy Code. Insurance Co. of North America v. NCG Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum Co.), 118 F.3d 1056, 1069-70 (5th Cir. 1997). That is, a bankruptcy court has discretion to override an arbitration agreement only if "it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the [Federal] Arbitration Act or

that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 107 (2d Cir. 2006) (quoting U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.), 197 F.3d 631, 640 (2d Cir. 1999)); In re Mirant Corp., 316 B.R. 234 (Bankr. N.D. Tex. 2004).

A non-core proceeding is a matter that would exist outside of the bankruptcy, but is "related to" a bankruptcy case. 28 U.S.C. § 1334(b). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Buckingham, 283 B.R. at 693 (quoting In re Goldstein, 201 B.R. 1, 4-5 (Bankr. D. Me. 1996)). "It is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b) . . . ." In re Gandy, 299 F.3d 489, 495 (5th Cir. 2002); *see also* In re Shores of Panama, Inc., 387 B.R. 864, 865 (Bankr. N.D. Fla. 2008) ("If the proceeding is non-core, the bankruptcy court has no discretion and must compel arbitration.").

In the Adversary, the Debtors list five causes of action,[2] as follows:

1)     Objection to Claim;

2)     Violation of the Gramm-Leach-Bliley Act;

3)     Contempt of Court and Violation of Federal District Court and Bankruptcy Court Orders and Policies Against Disclosure of Personal Identifiers and Sensitive Data;

4)     Contempt of Court and Violation of Federal Rule of Bankruptcy Procedure 9037 Failure to Redact Nonpublic Information; and,

---

[2] Although a proceeding, as a whole, is determined to be core or non-core, each cause of action, and each cause of action asserted against each defendant, is separately examined. Trefny v. Bear Stearns Sec. Corp., 243 B.R. 300, 318 n. 8 (S.D. Tex. 1999).

     5)     Invasion of Privacy and Intentional or Negligent Infliction of Emotional Distress.

Consideration of the causes of action establishes that the Objection to Claim is one which arises only in the context of a bankruptcy proceeding. Queen City filed a Proof of Claim and an Amended Proof of Claim in the Bankruptcy Case, to which the Debtors object. "This Court has held that filing a proof of claim under bankruptcy law 'invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution.'" In re Gandy, 299 F.3d at 499 (quoting In re Wood, 825 F.2d 90, 97 (5th Cir. 1987)). "In this sense, 'a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.'" Id.; In re Wood, 825 F.2d at 96-97 ("If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim . . . .").

The Debtors' cause of action for Contempt of Court (pursuant to Bankruptcy Code § 105 and § 107) and Violation of Bankruptcy Court Orders and Policies also is one which arises only in the context of a bankruptcy proceeding. In their Complaint, the Debtors maintain that Queen City violated the Uniform Local Bankruptcy Rules for the United States Bankruptcy Courts in the Northern District of Mississippi which enacted the Standard Operating Procedure Governing Protection of Personal and Sensitive Information and Public Access to Court Files in Accordance with the E-Government Act of 2002 (Compl. ¶ 32). While, in fact, the Uniform Local Bankruptcy Rules did not enact a Standard Operating Procedure as asserted by the Debtors, the United States Bankruptcy Court for the Northern District of Mississippi did issue a Standing Order Adopting Administrative Procedures for Electronic Case Filing on August 20, 2007, which mandates compliance with the policy of the Judicial Conference of the United States and the E-Government

Act of 2002 with regard to redaction of personal identifiers. Given that the Debtors seek relief pursuant to Bankruptcy Code § 105 and § 107 for Queen City's failure to comply with the Bankruptcy Court's Standing Order and the Administrative Procedures adopted thereunder, the Court concludes that the Debtors' cause of action for Contempt of Court and Violations of Bankruptcy Court Orders and Policies is one which arises only in the context of a bankruptcy proceeding.

Furthermore, the cause of action for Contempt of Court and Violation of Federal Rule of Bankruptcy Procedure 9037 is one which could only arise in the context of a bankruptcy proceeding. The Advisory Committee Note to Federal Rule of Bankruptcy Procedure 9037 provides in relevant part:

> The rule is adopted in compliance with section 205(c)(3) of the E-Government Act of 2002, Public Law No. 107-347. Section 205(c)(3) requires the Supreme Court to prescribe rules "to protect privacy and security concerns relating to electronic filing of documents and the public availability . . . of documents filed electronically.
>
> . . . .
>
> The rule is derived from and implements the policy adopted by the Judicial Conference in September 2001 to address the privacy concerns resulting from public access to electronic case files.

Fed. R. Bankr. P. 9037. In that the Bankruptcy Rules apply only in bankruptcy proceedings, the Debtors' cause of action asserting a violation of a Federal Bankruptcy Rule is one that could arise only in the context of a bankruptcy proceeding.

Each of the above-referenced causes of action, then, is derived entirely from the rights conferred by the Bankruptcy Code and Rules. To the contrary, however, the Debtors' causes of action for Violation of the Gramm-Leach-Bliley Act, Violation of Federal District Court Rules, and Invasion of Privacy and Intentional or Negligent Infliction of Emotional Distress claims do not arise

under or arise in a bankruptcy case. While the Gramm-Leach-Bliley Act and Federal District Court Rules may prescribe certain activities with regard to federal matters in general, they do not arise under or arise in the context of a bankruptcy proceeding. In addition, the cause of action asserted by the Debtors for Invasion of Privacy and Intentional or Negligent Infliction of Emotional Distress clearly arises under state law.

Having considered the foregoing, the Court determines that the causes of action asserted by the Debtors are ones which predominately arise under or in a bankruptcy case. Although not every cause of action asserted by the Debtors arises directly from the Bankruptcy Code or Rules, the thrust of the Debtors' Complaint is that Queen City violated bankruptcy rules and orders regarding privacy of personal information for which the Debtors seek remedies, in the form of money damages, sanctions, or the disallowance of Queen City's claim, provided by the Bankruptcy Code. Thus, as the Fifth Circuit reasoned in In re Gandy, "[w]hile some of the Debtor's remaining claims do involve her pre-petition legal or equitable rights, the bankruptcy causes of action predominate." In re Gandy, 299 F.3d at 497.

In addition, the Court notes that although Natasha Russell executed the Arbitration Agreement, the causes of action asserted in the Complaint are not related to the Contract itself. Similar to the situation before the bankruptcy court in In re Jones, "the lawsuit exclusively seeks relief because of events that occurred during the administration of her bankruptcy case. . . ." Jones v. Walter Mortgage Co. (In re Jones), 2008 WL 4905473, *4 (Bankr. N.D. Miss. 2008). The bankruptcy court elaborated, "The cause of action has absolutely nothing to do with the construction of Jones' home or determining issues relative to the promissory note and deed of trust which she signed. The cause of action seeks a determination of whether the defendants complied with the

Bankruptcy Code, the Bankruptcy Rules, and the order of this Court." Id. The same is true in this case. The causes of action asserted by the Debtors have nothing to do with the purchase of furniture or the loan agreement between Natasha Russell and Queen City, but allege violations of the Bankruptcy Code and Rules for actions taken by Queen City following the filing of the Debtors' Bankruptcy Case. To that end, the Court finds that the bankruptcy causes of action asserted in the Debtors' Complaint predominate and, accordingly, the Adversary constitutes a core proceeding.

**2.    Would Arbitration Conflict with the Purposes of the Bankruptcy Code?**

In In re Gandy, the Fifth Circuit stated, "That Debtor's bankruptcy causes of action predominate does not, however, end the analysis." In re Gandy, 299 F.3d at 498. That is, "Even when the cause of action is derived entirely from the federal rights conferred by the Bankruptcy Code, the bankruptcy court has discretion to deny enforcement of the arbitration clause only when enforcement would conflict with the purpose or provisions of the Code." Id. at 498.

Purposes of the Bankruptcy Code include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." In re National Gypsum, 118 F.3d at 1069. As noted, the Complaint in the case at bar primarily asserts causes of action and seeks remedies which arise only in the context of a bankruptcy proceeding. Centralized resolution of these bankruptcy issues and the Court's power to ensure obedience to its own orders weigh in favor of denying enforcement of the Arbitration Agreement. In the Court's opinion, enforcement of the Arbitration Agreement would inherently conflict with the underlying purposes of the

Bankruptcy Code.[3] The Court, therefore, will exercise its "significant discretion" to deny Queen City's Motion. In re Gandy, 299 F.3d at 495.

## Conclusion

Based on the foregoing, the Court concludes that the causes of action asserted in the Complaint comprise a core proceeding. Consequently, the Court has discretion to refuse to compel arbitration. The Court finds that it should exercise its discretion and deny the Motion.

IT IS, THEREFORE, ORDERED that the Motion is denied.

SO ORDERED, this the 23rd day of January, 2009.

_____
NEIL P. OLACK
U.S. BANKRUPTCY JUDGE

---

[3] In In re Gandy the Fifth Circuit considered whether claims that did not arise in or arise under the Bankruptcy Code should be bifurcated and sent to arbitration. The Fifth Circuit concluded that "[a]lthough it is technically possible that the Debtor's case be divided and some claims be sent to arbitration, . . . this approach here would be of disservice to the parties and defeat the purposes of the Bankruptcy Code." In re Gandy, 299 F.3d at 500. In the case at bar, the Court finds that, because the heart of the Debtors' Complaint and the relief sought thereunder so predominately derive from the Bankruptcy Code and Rules, bifurcation of the claims would serve no purpose.